1

2

3

4

5              UNITED STATES DISTRICT COURT

6              EASTERN DISTRICT OF WASHINGTON

7    BEATRIZ AMEZCUA GODINEZ,

8                            Plaintiff,          NO. 2:22-CV-0011-TOR

9         v.                                     ORDER DENYING DEFENDANTS'
                                                 MOTION FOR SUMMARY
10   CUSTOM APPLE PACKERS, INC.                  JUDGMENT
     and STARR RANCH GROWERS,
11   LLC,

12                           Defendants.

13

14         BEFORE THE COURT is Defendants' Motion for Summary Judgment

15   (ECF No. 22).  This matter was submitted for consideration with oral argument on

16   February 15, 2023.  Brian P. Dosch appeared on behalf of Plaintiff.  Daniel

17   Culicover and Stephanie Stauffer appeared on behalf of Defendants.  The Court

18   has reviewed the record and files herein, and is fully informed.  For the reasons

19   discussed below, Defendants' Motion for Summary Judgment (ECF No. 22) is

20   **denied**.

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 1

# BACKGROUND

This case arises out an employee's termination after contracting COVID-19. ECF No. 1.   Plaintiff raises the following causes of action: (1) violation of the Families First Coronavirus Response Act, Pub. L. No. 116-127, (2), violation of the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3), and (3) wrongful discharge in violation of public policy.  *Id.* at 6–8, ¶¶ 30–40.  On December 22, 2022, Defendants filed the present motion.  ECF No. 22.  The parties timely filed their respective response and reply.  ECF Nos. 33, 38.  Except where noted, the following facts are not in dispute.

In 2018, Plaintiff was hired at Custom Apple as a fruit packer.  ECF No. 23 at 1, ¶ 1.  Plaintiff was working at Custom Apple's Wenatchee, Washington Warehouse in 2020 when COVID-19 began.  *Id.*, ¶ 2.  At the time, the Human Resources Manager of the Wenatchee Warehouse was Elida Blanco.  *Id.* at 2, ¶ 3.

In February 2020, Custom Apple developed safety policies to adapt to the issues presented by COVID-19.  *Id.*, ¶ 4.  From March 2020 to present, Custom Apple updated its policies to include the updated science and best practices.  *Id.*

In early March 2020, Custom Apple's human resources team gave the first of several presentations to employees regarding COVID-19.  *Id.*, ¶ 6.  The presentations covered the evolving best practices, COVID-19 symptoms, and what Custom Apple was doing to protect its employees.  *Id.*  Throughout 2020, Custom

Apple notified its employees of updates. *Id.*, ¶ 7. Each presentation explained that employees who had COVID-19 symptoms should stay home. *Id.*, ¶ 8. Plaintiff disputes this, contending Custom Apple only explained to employees that if they are sick or have a family member who is sick (not specifically due to COVID-19), they need to stay home. ECF No. 34 at 4, ¶ 8.

Custom Apple gave up to two weeks of emergency paid sick leave under the FFCRA to any employee who was exposed to COVID-19, tested positive for COVID-19, or had to take care of a family member for COVID-19 related reasons. ECF Nos. 23 at 3, ¶ 9, 34 at 4, ¶ 9. Custom Apple urged employees to take emergency paid sick leave for COVID-19 related reasons. ECF No. 23 at 3, ¶ 10. Plaintiff disputes this, asserting that Defendants' presentations merely stated employees may qualify for emergency sick leave, Plaintiff did not know she qualified for the leave, and Defendants fired at least seven employees who used leave for COVID-19. ECF No. 34 at 5, ¶ 10. Defendants counter, in part by contending that from June 27 to July 27, 2020, 62 employees took FFCRA leave and there is no evidence that these employees were terminated and these employees are evidence that Custom Apple was encouraging employees to take leave. ECF No. 38 at 7, ¶ 10.

Custom Apple explained that it would not punish employees who used the emergency paid sick leave by issuing them attendance "occurrences" or in any

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 3

other way.  ECF No. 23 at 3, ¶ 11.  Plaintiff disputes this to the extent that Defendants did not explain to employees that they would not be punished for using emergency paid sick leave and that none of the presentations state that employees would not receive an attendance "occurrence" for using the leave despite Defendants' attendance policy penalizing employees who called in sick.  ECF No. 34 at 6, ¶ 11.

Custom Apple also explained that employees who violated COVID-19 policies would face consequences, and severe violations could result in termination.  ECF No. 23 at 3, ¶ 12.  Plaintiff disputes that Defendants told her she could be fired for violating Defendants' COVID-19 policies.  ECF No. 34 at 6, ¶ 12.  Defendants contend Custom Apple gave this information to employees verbally, rather than in writing.  ECF No. 23 at 3, ¶ 13.  Ms. Blanco informed employees that employees were to stay home if they were sick, and there would be consequences for violating Custom Apple's COVID-19 policy.  *Id.*, ¶ 14.  Plaintiff contends it was not until September 22, 2020 when Defendants informed employees in writing that they would not be assessed an attendance penalty if they called in with COVID-19 symptoms.  ECF No. 34 at 6, ¶ 11.

Custom's Apple's 2020 Employee Handbook, that was in effect in July 2020, listed 28 workplace standards of conduct that if violated, could subject an employee to disciplinary action up to and including termination.  ECF No. 23 at 3,

¶¶ 15–16.  An employee could be terminated for failure to observe safety practices and dishonesty.  *Id.*, ¶ 17.  As a result, employees who falsely told health screeners they did not have COVID-19 symptoms violated both Custom Apple's COVID-19 policies and workplace standards, which could form the basis for termination.  *Id.*, ¶ 18.

In late March 2020, Custom Apple conducted daily health screenings to identify workers who had COVID-19 symptoms.  *Id.* at 4, ¶ 19.  A Custom Apple employee acted as a health screener to ask every employee entering the Custom Apple warehouse a series of health screening questions, including whether the employee had a fever, cough, shortness of breath, sore throat, or muscle aches.  *Id.* Plaintiff disputes the questions the health screener would ask, and asserts that the health screener would ask whether the employee had the above symptoms that could not be attributed to another health condition.  ECF No. 34 at 9, ¶ 19. Defendants counter that the question with the other health conditions qualifier was not asked until July 9, 2020 and the July 6, 2020 health screening form demonstrates that employees were asked about symptoms without regard to whether the symptoms could be attributed to another condition.  ECF No. 38 at 16, ¶ 19.

In late June 2020, Plaintiff contracted COVID-19 before any vaccines were developed.  *Id.*, ¶ 21.  Plaintiff objected that there is no cited evidence to

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 5

demonstrate Plaintiff contracted COVID-19 in late June.  ECF No. 34 at 10–11, ¶ 21.

On July 6, 2020, Plaintiff messaged her son that she had COVID-19 symptoms for about five days or as early as July 1, 2020.  ECF No. 23 at 4, ¶ 21. Plaintiff disputes that she "knew" she had COVID-19, only that she had been feeling tired and had a headache as early as July 1, 2020.  ECF No. 34 at 11, ¶ 21.

Plaintiff also messaged a friend describing her COVID-19 symptoms:

> My throat began to ache, then the nape of my neck and my bones … But I thought that maybe it was the fatigue from the large number of hours were working … And I kept going to work, I started on the 1st of this month and on the 6th I went but I couldn't stand it anymore because I started to feel tired I couldn't breathe and I felt like I wasn't myself and I had a lot of sickness … Symptoms and is that as I did not pay attention from the first day I felt symptoms …

ECF No. 23 at 5, ¶ 24.

Plaintiff texted another friend that she started to feel symptoms on July 2, 2020.  *Id.* at 6, ¶ 25.  Plaintiff disputes any assertion that she knew she had COVID-19 before July 8, 2020, only that she was aware that she was experiencing symptoms.  ECF No. 34 at 12, ¶¶ 24, 25.

Between July 1 and 6, 2020, Plaintiff told the Custom-Apple health screener she did not have COVID-19 or COVID-19 symptoms.  ECF No. 23 at 6–7, ¶¶ 26– 28.  Plaintiff disputes any contention that she lied about having COVID-19 symptoms based on being asked whether the symptoms could be attributed to other

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 6

1    health conditions, and because she did not believe she had COVID-19, she

2    answered the questions truthfully.  ECF No. 34 at 15–17, ¶¶ 26–28.

3           On July 6, 2020, after stating she did not have symptoms at the beginning of

4    work, Plaintiff went to human resources to report that she was not feeling well, had

5    body aches, and felt very weak.  ECF No. 23 at 7, ¶ 29.  Plaintiff asserts that she

6    did not feel well and asked for leave to get tested for COVID-19, and that Ms.

7    Blanco denies having this conversation.  ECF No. 34 at 18, ¶ 29.  Plaintiff was

8    directed to go home.  ECF No. 23 at 7, ¶ 29.

9           On July 8, 2020, Plaintiff took a COVID-19 test and received a positive

10   result.  *Id.* at 8, ¶ 30.  The same day, Plaintiff reported to Ms. Blanco that she had

11   tested positive.  *Id.*, ¶ 31.  Ms. Blanco began contact-tracing by asking Plaintiff

12   questions from Custom-Apple's Post-Positive COVID-19 Questionnaire.  *Id.*, ¶ 32.

13   Plaintiff disputes that Ms. Blanco asked her any questions from a questionnaire,

14   and that the questionnaire at issue was not implemented until July 10, 2020.  ECF

15   No. 34 at 20, ¶ 32.  Defendants counter that they have had a post-COVID-19

16   protocol in place as early as March 24, 2020.  ECF No. 38 at 24, ¶ 32.

17          Defendants assert Plaintiff reported to Ms. Blanco that she began feeling

18   symptoms on July 4, 2020.  ECF No. 23 at 8, ¶ 33.  Plaintiff disputes this, asserting

19   that Ms. Blanco did not ask her when she first started having COVID-19

20   symptoms, and that Plaintiff told Ms. Blanco that she started thinking she had

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 7

COVID-19 on July 6, 2020 after she started work.  ECF No. 34 at 20, ¶ 33.

When Ms. Blanco asked Plaintiff why she told the health screener she had no symptoms, Plaintiff responded that she believed other employees answered "yes" on the health questionnaire so they could go home and Plaintiff did not want other employees saying that about her.  ECF No. 23 at 8, ¶ 34.  Plaintiff disputes that she stated any of this to Ms. Blanco, and contends that it was Ms. Blanco who stated employees lied to health screeners in order to go home.  ECF No. 34 at 21 – 22, ¶ 34.

Ms. Blanco summarized the phone call in an email to her supervisor, Frank Velazquez.  ECF No. 23 at 9, ¶ 36.  Again, Plaintiff disputes that that the factual content regarding symptoms prior to July 6, 2020 ever occurred.  ECF No. 34 at 23, ¶ 36.

Ms. Blanco asked Mr. Velazquez whether Plaintiff's conduct was enough to support termination and Mr. Velazquez responded "no."  ECF No. 23 at 9, ¶¶ 38–39.  Plaintiff disputes that Ms. Blanco asked any questions to Plaintiff for which she could ask Mr. Velazquez whether "the facts that she learned through her contact tracing was enough to support to terminate Plaintiff."  ECF No. 34 at 24, ¶ 38.

Mr. Velazquez directed Ms. Blanco to investigate the incident by asking Plaintiff to visit the office in two weeks or whenever she felt well enough, to

confirm that the responses Plaintiff gave to Ms. Blanco were correct.  ECF No. 23 at 9, ¶ 40.  Plaintiff again disputes that there were any responses for which to seek confirmation.  ECF No. 34 at 24, ¶ 40.

Mr. Velazquez decided Custom Apple would separate Plaintiff's employment if she confirmed that she came to work on July 6 with COVID-19 symptoms when she spoke with Ms. Blanco.  ECF No. 23 at 9, ¶ 41.  Plaintiff disputes this, contending that he would direct Ms. Blanco to terminate Plaintiff if she confirmed her previous statements to Ms. Blanco regarding knowingly having a gathering and knowingly coming to work sick.  ECF No. 34 at 25, ¶ 41.

On July 20, 2020, Plaintiff met with Ms. Blanco at the Wenatchee warehouse where Ms. Blanco asked Plaintiff if her answers on the Post Positive COVID-19 Questionnaire were correct.  ECF No. 23 at 10, ¶ 43.  Plaintiff disputes that Ms. Blanco discussed the questionnaire and contends Ms. Blanco did not ask her to confirm any prior responses.  ECF No. 34 at 25, ¶ 43.

Defendants contend Plaintiff confirmed she came to work on July 6th with COVID-19 symptoms of body ache and weakness and that she told the health screener she had no symptoms because she did not want other employees saying she was using COVID-10 as an excuse not to work.  ECF No. 23 at 10, ¶ 44.  Plaintiff disputes this, stating that Ms. Blanco did not ask her about her symptoms or her answers to the health screeners, and asserts she told Ms. Blanco how she

was feeling and that Ms. Blanco had encouraged her to rest and return to work. ECF No. 34 at 26, ¶ 44.

Ms. Blanco explained to Plaintiff that Mr. Velazquez decided to separate her from employment because Plaintiff had been dishonest and had endangered her coworkers. ECF No. 23 at 10, ¶ 45. Plaintiff disputes this, stating the Ms. Blanco told her she was fired for knowingly coming to work with COVID-19. ECF No. 34 at 27, ¶ 45.

Defendants contend Plaintiff was one of four employees terminated for being dishonest to health screeners at Custom Apple. ECF No. 23 at 10, ¶ 47. Plaintiff disputes that Mr. Velazquez terminated four employees where he hired back an employee after termination. ECF No. 34 at 28, ¶ 47.

Custom Apple is unaware of any other employees who knowingly made misrepresentations to health screeners about not having COVID-19 symptoms. ECF No. 23 at 10, ¶ 48. Plaintiff disputed this, contending Defendants were aware employees were being dishonest with health screeners based on employees lying about outside work gatherings. ECF No. 34 at 28, ¶ 28.

Defendants contend Custom Apple did not terminate employees for taking COVID-19 leave, but rather encouraged employees to take sick leave as needed. ECF No. 23 at 10, ¶ 49. Plaintiff disputes that Custom Apple encouraged employees to take leave, and in fact fired those who did. ECF No. 34 at 29, ¶ 49.

From April 1, 2020 to March 31, 2021, at least 320 employees to COVID-19-related sick leave.  ECF No. 23 at 10, ¶ 49.  Plaintiff contends that the 320 employees is misleading where the Quincy Warehouse had a different human resources manager in charge of personnel decisions, and contends that at least seven employees who took COVID-19 related leave from April 2020 through April 2021 were fired.  ECF No. 34 at 29, ¶ 49.

Defendants contend Plaintiff's use of COVID-19 leave was not a "negative factor" in Custom Apple's termination decision.  ECF No. 23 at 10, ¶ 50.  Plaintiff disputes this where Defendants fired at least seven employees, two of whom used COVID-19 leave, and that Defendants did not keep track of employees who Defendants knew lied to health screeners but did not take COVID-related leave.  ECF No. 34 at 30, ¶ 50.

Custom Apple maintains Plaintiff was terminated because she was dishonest, violated company policy, and endangered her coworkers.  ECF No. 23 at 10, ¶ 51.  Plaintiff disputes that she was dishonest and maintains she "was fired for testing positive for COVID-19 and for taking COVID-19 symptom-related leave."  ECF No. 34 at 33, ¶ 51.

## DISCUSSION

### I.  Summary Judgment Standard

The Court may grant summary judgment in favor of a moving party who

demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court must only consider admissible evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002). The party moving for summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. Further, a dispute is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* The Court views the facts, and all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Summary judgment will thus be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## II.  Evidentiary Objections

Defendants object to Plaintiff's hearsay evidence and move to strike a portion of Plaintiff's declaration on the grounds it is a "sham affidavit" that contradicts her deposition testimony.  ECF No. 37 at 3.

First, a court may consider inadmissible hearsay evidence on a motion for summary judgment so long as the underlying evidence may be provided in an admissible form at trial.  *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016).  The hearsay at issue is based on testimony that may be presented in an admissible form at trial, i.e. Plaintiff and Ms. Blanco may testify.  Therefore, the Court overrules Defendants' objection.

Second, under the "sham affidavit" rule, "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony."  *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).  Courts should limit application of the rule "because it is in tension with the principle that the court is not to make credibility determinations when granting or denying summary judgment."  *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012).  As such, the rule does not apply in cases where the affidavit elaborates, explains, or clarifies the deposition testimony, especially in cases where there is an honest discrepancy or mistake.  *Nelson v. City of Davis*, 571 F.3d 924, 928 (9th Cir. 2009).  Plaintiff, who speaks Spanish, stated in her declaration that she did not understand the translator

at the deposition.  ECF No. 35 at 8, ¶ 28.  Plaintiff asserts she thought she was

asked what the reason they told her she was fired, not what she believed.  *Id.*  This

clarification does not warrant application of the "sham affidavit rule" and the Court

therefore overrules Defendants' objection.

## III.    Retaliation Claims

Defendants move for summary judgment on Plaintiff's retaliation claims

under the FFCRA and FLSA.  ECF No. 22 at 12–18.  Plaintiff opposes summary

judgment, asserting there is direct and circumstantial evidence that create a

genuine issue of material fact regarding the reason for her termination.  ECF No.

33 at 10–17.

Under the Emergency Paid Sick Leave Act ("EPSLA") of the FFCRA, it is

unlawful for an employer "to discharge, discipline, or in any other manner

discriminate against any employee who: (1) takes leave in accordance with this

Act; and (2) has filed any complaint or instituted any proceeding under or related

to this Act … or has testified or is about to testify in any such proceeding."  Pub. L.

No. 116-127, § 5104 at 197, 134 Stat. 196-97 (2020).  An employer who violates

this section is "considered to be in violation of [§] 15(a)(3) of the [FLSA]" and

subject to FLSA penalties.  § 5105(b) at 197.  As a result, courts apply the FLSA to

FFCRA disputes.  *See Fuentes v. Human. For Horses*, No. 2:21-CV-02350-JAM-

AC, 2022 WL 5249444, at *2 (E.D. Cal. Oct. 6, 2022).

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 14

1    The FLSA prohibits retaliation by an employer against an employee

2    "because such employee has filed any complaint . . . under or related to this

3    chapter." 29 U.S.C. § 215(a)(3). The FLSA is a remedial statute and should be

4    interpreted broadly. *Kasten v. Saint-Gobain Performance Plastics Corp*., 563 U.S.

5    1, 13 (2011). Courts apply the burden-shifting framework in *McDonnell Douglas*

6    *v. Green*, 411 U.S. 792 (1973) to FLSA retaliation cases. *Lambert v. Ackerley*, 180

7    F.3d 997, 1008 (9th Cir. 1999). The parties stipulate to the first two parts of the

8    *McDonnell Douglas* burden shifting framework. ECF Nos. 22 at 13; 33 at 9. As a

9    result, the only issue before the Court is whether Defendants' stated reasons for

10   Plaintiff's termination are pretext. *See id.*

11   A plaintiff can prove pretext: (1) "indirectly by showing that the employer's

12   proffered explanation is unworthy of credence because it is internally inconsistent

13   or otherwise not believable" or (2) "directly, by persuading the court that a

14   discriminatory reason more likely motivated the employer." *Bowen v. M. Caratan,*

15   *Inc.*, 142 F. Supp. 3d 1007, 1025 (E.D. Cal. 2015) (quoting *Villiarimo v. Aloha*

16   *Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002)). This requires "specific,

17   substantial evidence of pretext," such as "discriminatory or retaliatory statements

18   or actions by the employer," or facts demonstrating that the employer's actions

19   were "inconsistent or not believable." *Id.* (internal quotation marks omitted).

20   Even with this standard, "a plaintiff's burden to raise a triable issue of pretext is

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 15

1  hardly an onerous one." *Frank v. Johnson*, 795 F.3d 1170, 1175 (9th Cir. 2015)

2  (citation and quotation marks omitted).

3      Plaintiff asserts three grounds that the basis for her termination was

4  pretextual: (1) Plaintiff was not dishonest in answering the COVID-19 health

5  screening, (2) Defendants did not honestly believe Plaintiff lied, and (3)

6  Defendants were substantially motivated by discriminatory reasons to fire Plaintiff.

7  ECF No. 33 at 10–17.  The Court addresses each in turn.

8      *A.  Plaintiff's Honesty*

9      The parties dispute whether Plaintiff lied at her health screening on July 6,

10  2020, which primarily stems from a disagreement over the nature of the questions

11  that Plaintiff was asked.  Plaintiff asserts she answered the questions truthfully

12  because she believed her symptoms on July 6, 2020 were due to conditions not

13  related to COVID-19, such as meningitis and working long hours.  ECF No. 33 at

14  10–11.  Plaintiff asserts she was asked whether she had symptoms "that cannot be

15  contributed to a preexisting condition" by citing to language from a Custom Apple

16  policy and procedure implemented prior to July 6, 2020.  *See* ECF Nos. 36-4 at 2,

17  36-12.  However, Defendants point to the health questionnaire signed July 6, 2020

18  which asks "since your last day of work, or since your last visit to this facility,

19  have you had any of the following?" with symptoms of chills, cough, shortness of

20  breath, fatigue, muscle or body ache, headache, new loss of smell, new loss of

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 16

taste, sore throat, congestion or runny nose, nausea or vomiting, and diarrhea.  ECF No. 26 at 71.

The screening health questionnaire dated July 6, 2020 does not qualify symptoms based on preexisting or unrelated health conditions.  ECF No. 26 at 71.  However, Plaintiff relies on language enacted prior to July 6, 2020 for the proposition that employees were asked questions with the pre-existing condition qualifier.  *See* ECF Nos. 36-4 at 2 (dated 03/24/20), 36-12 (last updated 5/9/2022).

Based on this record, there is a factual dispute regarding what questions Plaintiff was asked during her health screening on July 6, 2020, and consequently, whether Plaintiff lied.  In any event, the pretext inquiry looks to whether "an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless."  *Villiarimo*, 281 F.3d at 1063 (internal citation and quotation marks omitted).  Therefore, the dispute over whether Plaintiff actually lied is not dispositive to her claim of pretext.

## B.  Employer's Beliefs

It is undisputed that the reasons Defendants provided for Plaintiff's termination were (1) violating Custom Apple's policy, (2) lying on the health questionnaire, and (3) endangering the health of Custom Apple employees.  ECF No. 23 at 10, ¶ 51.  Plaintiff contends there is both direct and circumstantial evidence that Defendants did not believe the stated reasons for her discharge.

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 17

i.      <u>Ms. Blanco</u>

Plaintiff asserts Defendants could not have believed the reason for her termination where Ms. Blanco knew how Plaintiff was feeling leading up to July 6, 2020 where she dismissed her concerns of feeling tired and sore due to longer hours and a change in position.  ECF No. 33 at 13.  Defendants dispute that Ms. Blanco's knowledge of Plaintiff's symptoms is relevant because it was Mr. Velazquez as Custom Apple's Director of Human Resources who made the decision to terminate Plaintiff.  ECF No. 37 at 7.

Under a cat's paw theory, the animus of a non-decisionmaker may be imputed to a decisionmaker if the non-decisionmaker "sets in motion a proceeding by an independent decisionmaker that leads to an adverse employment action" and the termination therefore "was not actually independent because the biased subordinate influenced or was involved in the decision or decisionmaking process."  *Poland v. Chertoff*, 494 F.3d 1174, 1182 (9th Cir. 2007); *see also Staub v. Proctor Hospital*, 562 U.S. 411, 421 (2011).

Here, a jury could reasonably conclude that Mr. Velazquez would not have terminated without Ms. Blanco's report and representations.  Plaintiff contends Ms. Blanco knew Plaintiff was experiencing symptoms that she attributed to non-COVID-19 conditions and therefore could not have believed Plaintiff was lying.  ECF No. 33.  Defendants counter by citing to deposition testimony of Ms. Blanco,

but the questions were focused only on the content of the post-COVID-19 questioning and whether Ms. Blanco knew Plaintiff "commonly" had headaches. *See* ECF No. 36-3 at 6.

Viewing the facts in light most favorable to Plaintiff, there is a genuine issue of material fact as to whether Ms. Blanco actually believed Plaintiff lied, and in turn, whether Ms. Blanco believed the stated reasons for discharge.  As Plaintiff may prove a pretext through a "cat's paw" theory, summary judgment on Plaintiff's retaliation claims is not appropriate.

ii.    Shifting Reasons

Plaintiff asserts Defendants shifted the reason for her termination, including that she was initially fired for "lying" but then was also told she was "dishonest during the ensuing investigation" and "knowingly had a gathering and knowingly came to work sick."  ECF No. 33 at 13–14.  Defendants contend the basis for her termination "has been consistent: she was dishonest, she violated Custom Apple's policies, and she endangered her co-workers."  ECF No. 37 at 6.

In showing pretext, a plaintiff may show there are "shifting reasons" for the termination which are "fundamentally different" and incompatible justifications. *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918 (9th Cir. 1996).

Defendants' reasons for Plaintiff's termination are not fundamentally different nor incompatible.  Therefore, this reason alone is insufficient to raise a

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 19

genuine issue of fact as to whether Defendants' reasons for the termination was

pretext.  In any event, Plaintiff raised a genuine issue of fact for pretext through the

evidence discussed *supra*.

    *C.  Discriminatory Reasons*

    Plaintiff asserts Defendants were substantially motivated to terminate

Plaintiff because she took EPSLA leave when she tested positive for COVID-19.

ECF No. 33 at 14–16.  In support, Plaintiff rely on evidence purporting to show

that Defendants were aware that employees were lying about gathering outside

their home, Defendants did not keep track of employees who were not forthcoming

to health screeners, and Defendants terminated at least seven employees who took

EPSLA leave within six months of requesting leave.  *Id.*

    Defendants dispute Plaintiff's assertions, specifically noting that other

employees took FFCRA leave who were not terminated.  ECF No. 37 at 8–9.

Defendants evidence in support include employees who took leave, but that the

leave was not necessarily based on leave for employees who contracted COVID-

19.  The Court does not weigh this disputed evidence on summary judgment.

    For the above reasons, Plaintiff provided specific and substantial evidence

that give rise to triable issues as to pretext.  Therefore, Defendants are not entitled

to summary judgment on the retaliation claims brought under the FLSA and

FFCRA.

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 20

### IV.    Wrongful Termination in Violation of Public Policy

Washington's wrongful termination in violation of public policy claim is also analyzed under the *McDonnell Douglas* burden-shifting framework.  *Martin v. Gonzaga Univ.*, 191 Wash. 2d 712, 725–26 (2018).  If the employer provides legitimate reasons for discharge, the burden shifts back to the plaintiff to show the termination was "pretextual, or by showing that although the employer's stated reason is legitimate, the [public-policy-linked conduct] was nevertheless a substantial factor motivating the employer to discharge the worker."  *Id.*

Like the federal claims, Defendants do not challenge Plaintiff's prima facie case.  ECF No. 22 at 19.  Summary judgment on this claim is not appropriate for the same reasons stated *supra*, i.e. there are genuine issues of fact as to pretext.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

Defendants' Motion for Summary Judgment (ECF No. 22) is **DENIED**.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

DATED February 23, 2023.



THOMAS O. RICE
United States District Judge